IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

KENNETH B. MURPHY                                                                          PLAINTIFF

VS.                                              CASE NO. 05-CV-1075

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY                                            DEFENDANT

<u>**MEMORANDUM OPINION**</u>

Kenneth Murphy has appealed the final decision of the Commissioner of the Social Security Administration, denying his claim for Supplemental Social Security Income. Murphy applied for benefits on August 29, 2002, alleging disability due to low back pain and a possible pinched nerve with an onset date of March 26, 1998. Murphy's application was denied initially in November 2002, and again on reconsideration in March 2003. A hearing was held in September 2004, and on April 8, 2005, the administrative law judge (ALJ) found that Murphy's impairments do not prevent him from performing his past relevant work. Thus, the ALJ concluded that Murphy was not under a disability as defined by the Social Security Act. The Appeals Council denied Murphy's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Murphy filed his timely complaint in this Court. Both parties have filed appeal briefs. After careful consideration of the record as a whole, this Court finds that the decision of the Commissioner is not supported by substantial evidence.

STANDARD OF REVIEW

The Court's function on review is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *Smith v. Barnhart*, 435

F.3d 926, 930 (8th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. In assessing the substantiality of the evidence, the Court must consider both evidence that supports and evidence that detracts from the Commissioner's decision. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006). This Court may not reverse the Commissioner's decision simply because substantial evidence may support the opposite conclusion. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

In order to receive disability insurance benefits, Murphy is required to establish that he is disabled. One is disabled when he or she is unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that is expected to result in death or that has lasted or can be expected to last for a continuous period not less than twelve months. 20 C.F.R. § 404.4505. To meet this definition, one must have a severe impairment that makes him or her unable to do his or her past relevant work or any other substantial gainful work that exists in the national economy. *Id*.

The ALJ is required to apply a five-step sequential evaluation process to each claim for disability benefits; (1) whether the claimant has engaged in substantial gainful activity since filing his claim, (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments, (3) whether the impairment(s) meet or equal an impairment in the listings, (4) whether the impairment(s) prevent the claimant from doing past relevant work, and (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R.404.1520 (2006).

## BACKGROUND

After reviewing two post-hearing consultative examinations, the ALJ found that Murphy

had a combination of severe lumbosacral problems, minor left leg radiculopathy, and a limiting eye visual field.  The ALJ further found that Murphy did not have an impairment or combination of impairments that met or equaled a listing.  The ALJ determined that Murphy retained the capacity to perform all basic work-related activities at the light exertional level and that Murphy could not perform work "involving more than light work"  The ALJ found that Murphy's past relevant work as a fast food cook did not require the performance of work-related activities precluded by his residual functional capacity; thus, Murphy could return to his past work.

Murphy was thirty-five years old as of the hearing date and had completed approximately one year of college.  Murphy's primary work in the past was factory work and cooking for restaurants.  Murphy testified that he is currently unable to work because of lower back pain that radiates into his left leg and affects his mobility.  In addition to back pain, Murphy has high blood pressure and poor vision in his left eye.  Murphy also testified that he is a carrier of Hepatitis B, which causes him to occasionally feel weak.

According to Murphy, he was able to sit for approximately twenty minutes but only at a forty-five degree angle to be comfortable.  He testified that he could comfortably stand for approximately ten minutes and was able to walk approximately half a block.  Murphy walks with a cane to keep pressure off of his left side.  Murphy stated that he could lift no more than ten pounds; that he could sometimes pull but never push; and that he could not bend, stoop, or kneel very far.  According to Murphy, he could drive no more than thirty minutes at a time before he must stop and walk around.

Murphy testified that he was able to take care of his personal needs but that sometimes his wife had to help him dress and get out of the shower.  Murphy stated that he was able to help

his wife with housework for about ten to fifteen minutes at a time. Murphy's son took care of the yard work. During a normal day, Murphy would walk up the street to loosen his back, but he testified that he primarily stayed at home. According to Murphy, his medicine, including Skelaxin and Hydrocodone, made him sleepy.

The medical evidence is as follows. Murphy saw Dr. Newsome on February 24, 1998, with complaints of lower back pain. An exam revealed diffuse tenderness over the lower back, but the neurological exam was grossly normal. Murphy was seen at Family Care of South Arkansas on March 14, 2000, for treatment of low back pain. The exam showed tenderness to palpatation in the paraspinous muscles. The diagnosis was otitis externa and back strain. The x-rays of Murphy's lumbar spine taken on March 16, 2000, showed no evidence of a bony abnormality.

Murphy returned to Family Care on March 28, 2000, with the complaint of back pain and tingling in his feet and hands. The diagnosis was back strain. Murphy visited the emergency room at the Medical Center of South Arkansas on April 13, 2000, with a complaint of back pain. An MRI of Murphy's lumbar spine showed no evidence of a herniated or bulging disc.

Murphy returned to Family Care for follow-up of lower back pain, stating that his pain was not any better. Murphy was referred to Dr. Germann, a neurosurgeon, for an evaluation. On May 2, 2000, Dr. Germann evaluated Murphy and diagnosed low back pain, muscular and ligamentous. He noted that Murphy had point tenderness that was exquisite at L5-S1. Dr. Germann arranged for Murphy to have trigger point injections.

On May 10, 2000, Murphy presented to the emergency room with complaints of back pain, and he was diagnosed with myofascial pain in the lumbar spine. On November 23, 2000,

Murphy returned to the emergency room with complaints of tenderness over his lower left ribs, and the diagnosis was left chest wall contusion and possible hypertension.

Dr. Watson of Family Care saw Murphy on November 27, 2000, and the exam revealed chest wall tenderness. Murphy saw Dr. Watson again on May 24, 2001, with complaints of lower back pain radiating into his left leg and numbness in his left leg. A musculoskeletal exam revealed tenderness in the left paraspinous muscle. Dr. Watson noted that Murphy had positive leg raises while laying down. The diagnosis included lumbar pain and radicular neuropathy. Dr. Watson prescribed Vioxx, a steroid pack, muscle relaxers, and Ultam for pain.

In June 2001, Dr. Giles, a neurosurgeon, saw Murphy for complaints of low back, left hip, and left leg pain. Murphy also reported numbness in his toes and stated that his pain was fairly constant, particularly with walking or lying flat. Murphy rated his pain as an eight on a zero-to-ten scale. Murphy reported that the previous epidural injections were not helpful. Dr. Giles diagnosed lumbar radicular syndrome, etiology unknown. Dr. Giles stated that there was nothing to be done for Murphy from a neurosurgery point of view.

Murphy presented to the emergency room on December 12, 2001, with complaints of chest pain, nausea, and dizziness. The diagnosis was rhinosinusitis, chest wall pain, and increased blood pressure. Dr. Watson of Family Care saw Murphy on December 14, 2001, for complaints of chest wall pain. Dr. Watson diagnosed musculoskeletal pain. Murphy was also treated for chest pain on January 15, 2002.

Murphy was seen in the emergency room on May 10, 2002, with complaints of headaches and neck and back pain following a motor vehicle accident. On April 27, 2002, Murphy saw Dr. Bryant, an orthopedic surgeon, for numbness and tingling in Murphy's left leg. Dr. Bryant's

exam showed tenderness and spasm in the midline, but he noted that Murphy performed full straight leg raises and had intact lower extremity reflexes. A lumbar spine x-ray was negative. The diagnosis was lumbar strain with possible disc disease. Dr. Bryant recommended medications, a back brace, and an MRI.

On September 4, 2002, Murphy underwent an MRI of his lumbar spine. The MRI showed some equivocal findings of very minimal early L4-L5 degenerative disc disease. Murphy returned to Dr. Bryant for follow-up on September 10, 2002, complaining of severe low back pain. A physical exam showed tenderness in the right, left, and midline of the low back with lower extremity paresthesias. An RS muscle stimulator was ordered and Murphy was prescribed a cane at his request.

Murphy underwent an EMG/NCS on September 17, 2002, which revealed some evidence of a mild left L-5 radiculopathy. There was no evidence of peripheral neuropathy. On September 23, 2002, Dr. Bryant referred Murphy to pain management for persistent lower extremity paraesthesias. On October 27, 2003, Murphy presented to the emergency room for treatment of an injury to his left third finger that he sustained while playing basketball.

On December 9, 2004, Murphy underwent an eye examination at the request of the ALJ. With glasses, Murphy's vision was 20/20 in his right eye and 20/50 in his left eye. Dr. Parker, the examiner, stated that Murphy could not be helped with treatment but that Murphy's eyesight should remain stable. Dr. Parker stated that Murphy should not be on scaffolding or ladders because of Murphy's decreased vision in his left eye.

At the ALJ's request, Murphy saw Dr. Sharma, a physical medicine and rehabilitation specialist, on December 10, 2004. Murphy's chief complaints were low back pain and numbness

in his left leg and foot. Murphy rated his pain as a ten out of ten and stated that he had no "good days." Murphy's medications at this time included Skelaxin, Ultram, and Verapamil. Dr. Sharma assessed Murphy with a history of lumbar radicular pain and hypertension for the past four years. Dr. Sharma opined that Murphy could frequently lift ten pounds and occasionally lift up to twenty pounds. He also opined that Murphy could sit for eight hours a day and stand/walk up to six hours a day. Dr. Sharma stated that Murphy could frequently do simple grasping, fine manipulations, handle objects, and reach but could only occasionally push or pull with hands and feet. Dr. Sharma opined that Murphy could occasionally climb and stoop but should never crouch, kneel, or crawl and that Murphy should avoid concentrated exposure to heights and moving machinery. The medical records indicate that Murphy has a history of high blood pressure but that his hypertension was being controlled by medication.

## DISCUSSION

Murphy argues two points for reversal: (1) the ALJ's decision that Murphy could perform his past relevant work is not supported by substantial evidence, and (2) the ALJ did not properly assess Murphy's credibility, causing the ALJ's findings regarding Murphy's residual functional capacity to be improperly skewed. This Court will now address Murphy's first argument. Murphy asserts that the ALJ's decision that Murphy could perform his past relevant work is not supported by substantial evidence for two reasons: (1) because the ALJ did not discuss the requirements of Murphy's past relevant work as a fast food cook and (2) because the ALJ found that Murphy could only perform light work[1] and the Dictionary of Occupational Titles

---

[1]Light work involves lifting no more than twenty pounds at one time and frequently lifting or carrying objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking

classifies the physical demands of a fast food cook as medium[2], not light. *See Dictionary of Occupational Titles* 313.374-010 (4th ed. Rev. 1991).

Murphy has past relevant work experience as a fast food cook, and he has the burden of proving an inability to perform his past relevant work. *See Eichelberger v. Barnhart*, 390 F.3d 584 (8th Cir. 2004). An individual is not disabled if they retain the capacity to perform either their past relevant work as it was actually performed or as it is generally performed in the national economy. *Evans v. Shalala*, 21 F.3d 832, 833-34 (8th Cir. 1994).

The ALJ has a duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant is capable of doing before determining that the claimant is able to perform any past relevant work. *Sells v. Shalala*, 48 F.3d 1044, 1046 (8th Cir. 1995) (emphasis in original); *Nimick v. Secretary of Health & Human Serv.*, 887 F.2d 864, 866 (8th Cir. 1989). The United States Court of Appeals for the Eighth Circuit has held, consistent with Social Security Regulation 82-62, that a "conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his [or her] past work." *Sells*, 48 F.3d at 1046 (citing *Groeper v. Sullivan*, 932 F.2d 1234, 1239 (8th Cir. 1991)). Social Security Regulation No. 82-62 provides in pertinent part:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves

---

or standing. *Id*.

[2]The medium work category involves lifting no more than fifty pounds at a time with frequent lifting or carrying up to twenty-five pounds. 20 C.F.R. § 404.1567(c).

> the issues as clearly and explicitly as circumstances permit.
>
> ....
>
> Any case requiring consideration of [past relevant work] will contain enough information on past work to permit a decision as to the individual's ability to return to such past work ....

The ALJ's one-sentence, conclusory statement that Murphy can return to his past work as a fast food cook falls short of the standards required of the above-cited Social Security regulation and the Eighth Circuit's decisions interpreting that regulation. The only evidence in the record regarding the tasks required by Murphy's former job as a fast food cook is found in the SSA-3369-BK form that Murphy filled out as part of the application for benefits process. In this form, Murphy indicated that his past work as a cook at Wendy's required frequent lifting of less than ten pounds and that the heaviest weight he lifted was less than ten pounds. Murphy reported that he walked and stood a total of eight hours each day at this job. There is no testimony from the hearing that references the physical and mental demands placed on Murphy as a fast food cook. The evidence contained in the record was not sufficient to allow the ALJ to make a proper determination as to the physical and mental demands placed on a fast food cook.

The ALJ's opinion contains neither a discussion of the demands made of a fast food cook nor explicit findings as to these demands. The ALJ found that Murphy could only perform light work; yet, he concluded that Murphy could return to his past job as a fast food cook, which the Dictionary of Occupational Titles categorizes as medium-level work. *See Dictionary of Occupational Titles* 313.374-010 (4th ed. Rev. 1991). The ALJ's discussion of this issue consisted of the mere statement that he had made a "direct comparison between Murphy's retained capacities and the physical and mental demands of his past relevant work" and the

perfunctory statement that Murphy "can return to some of his past relevant work as a fast food cook." Notably absent from the AlJ's opinion is a discussion regarding Murphy's retained capacity to stand and/or walk for lengthy periods.[3] The ALJ's opinion lacks the full development and explanation that the Social Security regulations and rulings discussed above require. Thus, without a more detailed factual finding as to Murphy's present capabilities and how they relate to the physical and mental demands of his past relevant work, the decision that Murphy's impairments do not prevent him from performing his past relevant work is not supported by substantial evidence on the record as a whole. *See Kirby v. Sullivan*, 923 F.2d 1323, 1327 (8th Cir. 1991); *Nimick*, 887 F.2d at 868. Thus, this case should be remanded to the ALJ for further proceedings consistent with this opinion.

On remand, the ALJ shall decide whether, in light of his disabilities, Murphy is able to perform the required duties of his past work as a fast food cook. We direct the ALJ to make specific factual findings as to the physical and mental demands of Murphy's past relevant work. To accomplish this, the ALJ may supplement the record by requesting information from Murphy's former employer as to the physical and mental demands of his position as a fast food cook. Alternatively, the ALJ may refer to the job descriptions in the *Dictionary of Occupational Titles*, as this Court has done, for a definition of Murphy's job as it is performed in the national economy. If, after proper review of an adequately developed record, the ALJ finds that Murphy cannot return to her past relevant work, the burden will shift to the Secretary to prove the

---

[3] The only evidence in the record referencing the physical demands of a fast food cook is Murphy's own declaration on a work history report that his past job as a cook for Wendy's required him to walk and stand for eight hours each day. Murphy testified at the hearing that he could stand comfortably for only ten minutes. On the other hand, Dr. Sharma opined that Murphy could stand/walk up to six hours per day.

existence of other jobs in the national economy that Murphy can perform. *See Sells*, 48 F.3d at 1047.

Turning now to Murphy's second argument for reversal, Murphy asserts that the ALJ erred in discrediting Murphy's testimony regarding his subjective complaints of pain, causing the ALJ's findings regarding Murphy's physical capacities to be improperly skewed. Murphy testified that he could no longer work primarily because of chronic, lower back pain. The ALJ is required to consider all the evidence relating to Murphy's subjective complaints including evidence presented by third parties that relates to the following: (1) Murphy's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. The ALJ must make an express credibility determination that explains, based on the record as a whole, why claims were found to be not credible. *Dukes v. Barnhart*, 436 F.3d 923, 928 (2006). Credibility findings are for the ALJ to make when the findings are adequately explained and supported. *Id*. This Court will not find error where the ALJ considered, but discredited for good cause, a claimant's complaints of pain. *Brown*, 390 F.3d at 541. Inconsistencies between a claimant's complaints and the record as a whole are a valid basis from which to make assessments regarding both credibility and the severity of symptoms and/or impairments. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997).

Much of Murphy's claim depends on his credibility, because a large portion of his case is his subjective interpretation of his pain and disabling problems. There is no doubt that Murphy experiences pain, but the important question is how severe the pain is. *Brown v. Barnhart*, 390 F.3d 535, 541 (8th Cir. 2004). The ALJ acknowledged that pain is difficult to measure and prove and that pain is perceived differently by individuals; however, the ALJ found that Murphy enhanced his descriptions of his "disabling problems." Consequently, the ALJ discredited Murphy's testimony regarding the extent of his pain. The ALJ considered Murphy's daily activities and concluded that these activities "do not constitute substantial evidence that [Murphy] has the functional capacity to engage in substantial gainful employment." Yet, the ALJ correctly stated that daily activities are only one of the relevant factors that must be considered in the overall determination of disability. *See Polaski*, 739 F.2d at 1322.

Murphy testified that he was occasionally weak because of his hepatitis B diagnosis. This diagnosis, however, is not supported by the medical evidence. There is no medical evidence in the record of this diagnosis and no evidence that Murphy has sought treatment for this condition. Murphy's vision in his left eye is impaired, but Murphy stated at an eye exam that he did not wear his eyeglasses on a regular basis because he did not like the frames. Moreover, Murphy's visual problems have not prevented him from working in the past.

Murphy claimed that his back pain that precluded him from engaging in substantial gainful activity began in March 1998; yet, on October 27, 2003, Murphy presented to the emergency room for a finger injury he sustained while playing basketball. The ALJ noted that Murphy's demeanor at the hearing was not consistent with one who was experiencing debilitating pain. The ALJ further noted that, although Murphy's back problems are severe and cause him to experience some

limitation, pain, and discomfort, no physician has recommended nor has Murphy undergone surgery for his back condition. A 2002 MRI revealed that "there may be some very minimal L4-5 degenerative disc disease but this is equivocal. Otherwise, the lumbar [MRI] appears entirely normal."

The ALJ ordered two post-hearing consultative examinations. One of these examinations was with a physical medicine and rehabilitation specialist, Dr. Sharma. Dr. Sharma reported that there was no muscular atrophy in either lower extremity. The lower back examination revealed the following:

> [Murphy] has full flexion to 90 degrees and extension is 15 degrees. Right and left lateral flexion and rotation is within normal limits. He can tiptoe and hell walk and tandem walk without difficulty. He is able to perform a deep squat. No leg length discrepancy noted. Straight leg raise is normal. Faber's test and Popliteal compression test is negative

Neurologically, muscle strength was within normal limits in both upper and lower extremities. Coordination, vibration sensations, and proprioception were within normal limits. Dr. Sharma concluded that Murphy could sit for eight hours and stand/walk for six hours, indicating a light range of work, but that he should avoid crouching, kneeling, bending, or crawling. The opinion of a consultative examiner is not entitled to controlling weight; however, it is medical evidence that must be considered. *See* 20 C.F.R. § 416.927.

Here, the ALJ adequately explained his findings, gave proper attention to the *Polaski* factors, and specifically discussed the inconsistencies in the record on which he based his decision. While it is clear from the testimony and medical evidence that Murphy suffers from some degree of pain, the record as a whole does not support his subjective complaints of disabling pain. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that the fact that working may cause pain or

13

discomfort does not mandate a finding of disability).  Thus, inconsistencies in the record combined with the lack of supporting objective medical evidence support the ALJ's decision to discredit the extent of Murphy's subjective complaints.  Therefore, the decision to discredit Murphy's testimony regarding the extent of his pain is supported by substantial evidence on the record as a whole and is affirmed.

## CONCLUSION

For the foregoing reasons, this Court reverses the decision of the Commissioner regarding Murphy's ability to perform his past relevant work and directs that this case be remanded to the ALJ for further proceedings consistent with this opinion.

Dated this 23rd day of January 2007.

      /s/ Harry F. Barnes

Hon. Harry F. Barnes
United States District Judge